Janice Lynn STEPHENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–00–00853–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 2001.

Timothy Hootman, Houston, for Appellant.

John B. Holmes, Dist. Atty., Rikke Burke Graber, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices COHEN, BRISTER,* and SMITH.**

## OPINION

MURRY B. COHEN, Justice.

A jury convicted appellant of possession of cocaine weighing less than one gram, and the trial judge assessed punishment at one year in state jail. We reverse and remand.

### Facts

On October 29, 1999, Officer Latin was conducting undercover surveillance in a parking lot while officers executed a search warrant inside a nearby apartment. A vehicle with Shari Marling, the driver, and appellant, the passenger, approached Officer Latin. Officer Latin determined that Marling wanted cocaine when Marling said, "I'm trying to get a 20," which means $20 worth of drugs. Officer Latin also asked appellant what she wanted, and she said that she "was with Ms. Marling."

Officer Latin told appellant and Marling to wait while he obtained the drugs. Officer Latin notified other officers, and Officer King approached the passenger's side of the vehicle and ordered appellant to raise her hands and get out. As appellant did, her purse and a crack pipe fell to the ground. The crack pipe contained 3.9 milligrams of cocaine residue.

At trial, appellant called Marling as a defense witness. Marling at first testified, but then, still on direct examination, Marling refused to testify, claiming the Fifth Amendment privilege against self-incrimination. Despite Marling's prior testimony about the drug transaction, the trial judge allowed Marling to claim the privilege and ordered the jury to disregard all of Marling's prior testimony, including that (1) Marling had a drug problem and smoked cocaine regularly; (2) appellant did not use drugs, did not condone Marling's drug use, and was going to help Marling enter a program for drug abusers while appellant allowed Marling to live in appellant's home; (3) appellant was disappointed in Marling because of Marling's drug use; (4) Marling pled guilty and was sentenced to 120 days for possessing cocaine; and (5) appellant never told Officer Latin she wanted drugs. Marling had testified to all of this before claiming the Fifth Amendment privilege.[1] Overruling appellant's objection and request that Marling be compelled to testify, the judge instructed the jury to disregard all of her testimony.

---

* The Honorable Scott Brister, who became Chief Justice of the Fourteenth Court of Appeals on July 16, 2001, continues to sit by assignment for the disposition of this case, which was submitted on June 18, 2001.

** The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The dissenting opinion contends the record shows that Marling had a good privilege claim because Marling pleaded "nolo contendere to possession of ... cocaine on a push rod.... Marling was never prosecuted for possession of [a crack pipe], and thus was entitled to assert her Fifth Amendment rights

with respect thereto." We disagree that the record showed that the cocaine Marling pled guilty to possessing was on a push rod. The record on that point consists of two questions answered "I don't know" by Officer King and a vague mention of "this device" in another question. The State has never claimed Marling was prosecuted for cocaine on the push rod, rather than for cocaine in the crack pipe. Nor has the State claimed that Marling had a privilege. Nor has the State claimed that Marling did not waive any privilege she may have had. Those factual contentions and legal arguments are asserted only in the dissenting opinion.

## Analysis

In issues one through three, appellant contends the trial judge erred by striking Marling's testimony because, by testifying, she waived her Fifth Amendment privilege.

The State agrees that Marling waived her privilege. It states, "Marling waived her Fifth Amendment privilege when she began her testimony and could not then be permitted to assert it to prevent the disclosure of additional relevant facts." [2] The State contends there was no error, however, because "once the trial court determined that Marling would persist in her refusal to testify further, the judge had no choice but to strike her earlier testimony." We disagree.

■ The judge should have compelled Marling to testify, instead of allowing Marling to claim the privilege she had already waived.[3] Because Marling waived the privilege, appellant was entitled to present Marling's testimony. *See Draper v. State,* 596 S.W.2d 855, 857 (Tex.Crim.App.1980)

("If [a witness] voluntarily states a part of the testimony, he waives his right, and cannot afterwards stand on his [Fifth Amendment] privilege.").[4] The trial judge erred by not compelling Marling to continue testifying and also by striking her previous testimony, and both errors were constitutional. *See Draper,* 596 S.W.2d at 857 (denial of compulsory process of witnesses in violation of Sixth and Fourteenth Amendments to United States Constitution and Art. I, sec. 10, of the Texas Constitution); *see also Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988) (right to compulsory process is not only the right to subpoena witnesses, but also to present them).

■ We are not holding that by testifying on one subject, a witness waives her privilege on all subjects. Each additional question may raise new potential for self-incrimination, and therefore, once the witness invokes the privilege, the court must determine "... whether the question present[s] a reasonable danger of further cri-

---

**2.** In addition, the State's brief continued:

Once having related part of a transaction, a witness should not be permitted to assert the Fifth Amendment in order to prevent disclosure of additional, relevant facts. *Ikeda,* 846 S.W.2d at 521; *Draper v. State,* 596 S.W.2d 855, 857 (Tex.Crim.App.1980). "If [a witness] voluntarily states a part of the testimony, he waives his right, and cannot afterwards stand on his [Fifth Amendment] privilege." *Id., citing Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).... Marling testified to some of the facts that occurred on the night of her arrest, but refused to testify regarding ownership of the crack pipe. Marling gave a partial account of the facts. However, *once she waived her Fifth Amendment privilege and began her testimony, Marling could not be permitted to assert her Fifth Amendment rights as to particular facts.* (Emphasis added.)

**3.** Striking the testimony would have been an option if Marling had had a meritorious privilege claim that she had not waived. Striking

the witness's testimony is not an option if the witness has no valid privilege, *i.e.,* if the witness has waived the privilege, as Marling did. No testimony is presumed to be privileged. TEX.R. EVID. 501. On the contrary, all relevant testimony is admissible, TEX.R. EVID. 402, and the burden is on the one asserting a privilege—Marling—to prove her entitlement to it. *Carmona v. State,* 941 S.W.2d 949, 954 n. 6 (Tex.Crim.App.1997). The State does not contend Marling did so.

**4.** This is not a case like *Keller v. State,* where the trial court properly struck a defense witness's direct testimony because he refused to be cross-examined by the State. 662 S.W.2d 362, 365 (Tex.Crim.App.1984). Marling never refused to be cross-examined. The State never cross-examined her or tried to. This case is about the defendant's right to present evidence, not about the State's right to cross-examine witnesses.

mination in light of all the circumstances, including any previous disclosures." *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). We believe that rule does not apply here, however, because the State, after considering "all the circumstances, including [Marling's] ... previous disclosures," states that Marling waived the privilege and thus "could not be permitted to assert her Fifth Amendment rights as to particular facts." *See* notes 1 and 2. Given that posture, no further inquiry is needed.

■ When there is constitutional error, we must reverse unless we determine beyond a reasonable doubt that the error made no contribution to the conviction. Tex.R.App. P. 44.2(a). We cannot say that these errors were harmless because they (1) eliminated existing testimony important to appellant's defense, including testimony that appellant was not a drug user; (2) stopped Marling from giving additional, relevant testimony that could have changed the trial's outcome; and (3) left the jury with a potentially distorted view of the facts, *i.e.*, the arresting officers' view. Moreover, the record shows that appellant's conviction was not inevitable: (1) jury deliberations lasted over four hours, longer than the testimony and arguments combined; (2) the jury sent out three written questions, one asking to see Marling's judgment of conviction from this transaction and two asking about whether and where Officer King saw the pipe fall to the ground; and (3) the jury sent out a note stating that two jurors had voted to acquit appellant. We conclude that the guilty verdict was not easily reached, even without Marling's testimony. With it, the result may have been different.

We sustain issues one through three.

■ In issues four through six, appellant contends the trial judge erred by limiting Robin Rhodes's testimony. We agree and will reach this issue because it is likely to arise again after remand. We follow the usual standard of review, abuse of discretion, for the trial judge's decision to limit testimony. *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex.Crim.App.1990) (op. on reh'g).

■ Rhodes testified that Marling told him at least three times the pipe was hers and that appellant did not know of it. Rhodes, however, was vulnerable to impeachment because he was appellant's fiancé and had felony and misdemeanor theft and credit card abuse convictions, which the State brought out on cross-examination. Because of the State's impeachment, appellant contends she needed to prove Rhodes credible by showing that the State had relied on Rhodes's testimony repeatedly and had paid him richly for those services.

Rhodes testified before the jury that he was currently employed by the Harris County Organized Crime Narcotics Task Force, which included the Harris County District Attorney's Office, as a confidential informant in over 50 cases, more than 80 percent of which resulted in convictions; that he had twice testified for the State, including once in a capital murder prosecution; and that the State had not doubted him.

Rhodes was not allowed to testify that (1) the Harris County District Attorney's Office paid him $30,000 for his participation in the capital murder case; (2) he received $300 from the Harris County District Attorney's Office about four weeks before this trial; (3) more than $1000 was pending for his help with a large narcotics transaction; (4) he had helped secure over 50 search warrants; and (5) the search warrants obtained solely on the basis of Rhodes's statements were "too numerous to count." The State contends Rhodes's

excluded testimony was cumulative and thus harmless because he testified he had assisted the State often and the State never doubted him. The State further contends that any error was harmless because Rhodes's excluded testimony would have implied that Rhodes "might say anything for money." We disagree.

The jury never learned that the Harris County District Attorney's Office, whose representative was standing in front of it attacking Rhodes's credibility, had paid Rhodes $30,000 for his testimony in a capital murder case. That was a crucial piece of evidence in this trial. The amount far exceeds any this panel has seen paid to a state court witness. If the jury had known that, it could have concluded that Rhodes was credible because the very agency prosecuting this case was willing to believe him, richly reward him, and vouch for him to a judge and jury when life and death were at stake. If Rhodes was worth $30,000 when he testified for the Harris County District Attorney's Office, the jury needed to know that to assess his worth when he testified against it. In addition, the excluded testimony showed how much money Rhodes was risking by offending his employer with his testimony in this trial. We hold the trial judge abused her discretion by excluding item (1).

The same is true, for similar reasons, as to Rhodes's pending and recently received payments, items (2) and (3) above. The same is also true of items (4) and (5), that Rhodes had helped secure over 50 search warrants and that many were obtained based solely on his statements. This shows that the police did not just receive and use information from Rhodes, but repeatedly represented that information as the truth to judges, who also accepted it as the truth and acted on it by issuing search warrants. This was not merely cumulative of Rhodes's testimony to the jury. It was uniquely powerful and vastly superior evidence.

Finally, the prosecutor here never would have argued at trial that Rhodes "might say anything for money" because that would have destroyed the credibility of his own (and Rhodes's) employer, the Harris County District Attorney's Office, and the police for having used Rhodes as a witness and informant, as well as possibly exposing them to civil and criminal liability and professional discipline, not to mention the possibility that it might have led to setting aside convictions obtained with Rhodes's help.

■ Given the importance of Rhodes's testimony, the degree to which Rhodes was impeached, and the defensible nature of the case, we conclude that appellant was harmed. Tex.R.App. P. 44.2(b).

We sustain issues four through six.

We reverse the judgment and remand the cause.

Justice BRISTER, dissenting.

En Banc consideration was requested.

A majority of the justices of the Court voted to deny en banc consideration. Tex. R. App. P. 41.2(c).

Justice TAFT, dissenting from denial of en banc consideration.

Chief Justice SCHNEIDER, dissenting from the denial of en banc consideration for the reasons stated in Justice TAFT's dissenting opinion.

Justice JENNINGS, dissenting from the denial of en banc consideration for the reasons stated in Justice BRISTER's dissenting opinion.

SCOTT BRISTER, Justice, dissenting.

Because I disagree with the majority on all points in this appeal, I respectfully dissent.

A trial court may strike the complete testimony of a defense witness who refuses to answer a question germane to her testimony. *See Keller v. State*, 662 S.W.2d 362, 365 (Tex.Crim.App.1984). The majority admits the trial court acted correctly in doing so if Shari Marling had a meritorious privilege claim. I believe she did.

Marling pleaded nolo contendere to possession of a trace amount of cocaine on a push rod, a device found on the seat on Marling's side of the car. Appellant's prosecution was for possession of a trace amount of cocaine found on a crack pipe, which Officer Kimberly King testified fell from appellant's purse. Marling was never prosecuted for possession of the latter item and thus was entitled to assert her Fifth Amendment rights with respect thereto.

I concede that defense counsel's questions and Marling's answers could have been clearer, but nevertheless I believe the record supports this conclusion. The push rod and the crack pipe were both admitted at trial. The Fifth Amendment issue arose when defense counsel questioned Marling about her arrest:

> Q. . . . It was regarding these two devices here; is that correct? Can you see those?

1. THE COURT: Ms. Marling, I just want to make sure we're understanding each other.
   Defense counsel had asked you to look at State's Exhibit No. 2, which is a pipe, and asked if that belonged to you and you took the Fifth about that; is that correct?
   THE WITNESS: That's correct.

2. [Cross-examination of Officer King by defense counsel]

> A Okay. It's that one was what I saw. I never saw the other one. That one that I saw.
>
> . . . .
>
> —Q you pled guilty to possession of cocaine on this device; is that correct?
> A Yes.
> Q This device, was that yours?
> A I don't want to testify on that. I'd like to take the Fifth on that.

This last question was necessary only if defense counsel and the witness were distinguishing between the two devices. Marling admitted pleading guilty to possession of one and claimed privilege as to the other. Shortly thereafter, the Court's questions made clear that the latter was the pipe.[1] Thus, it must follow that she pleaded guilty to possession of the push rod. This is certainly what defense counsel believed.[2]

The majority relies heavily on the State's brief to establish that Marling waived her privilege claim. The brief cites the well-established rule that a witness cannot testify about part of a subject and then invoke the privilege against self-incrimination as to particular details. *Mitchell v. United States*, 526 U.S. 314, 321, 119 S.Ct. 1307, 1311–12, 143 L.Ed.2d 424 (1999). In this sense, the State is correct that Marling "waived" the privilege when she began to testify.

But this is not the end of our inquiry. In *Rogers v. United States*, the United States Supreme Court stated:

> Q Isn't it true that the driver of the car [Marling] pled guilty to possession of the rod?
> A I don't know.
> . . . .
> Q And you don't have knowledge one way or another if the driver of this vehicle pled guilty to possession of the cocaine on the push rod?
> A No. That wasn't my objective.

Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further "waiver" of the privilege against self-incrimination. Admittedly, petitioner had already "waived" her privilege of silence when she freely answered criminating questions relating to her connection with the Communist Party. But when petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures.

340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). Thus, although Marling "waived" the privilege by beginning to testify, we still must assess whether there was a reasonable danger of "further crimination." [3]

I believe there clearly was. Appellant defended this case by arguing the crack pipe was Marling's, not hers. Seeing his opportunity, defense counsel asked Marling to admit this. Seeing her danger, Marling declined. Because Marling had never been prosecuted for possession of the device at issue in this case, I believe her fear was reasonable and the trial court applied the proper remedy by striking all of her testimony.[4]

On appellant's second point, I do not believe the trial court committed reversible error by limiting Robin Rhodes's testimony. While I agree it would have been preferable for the trial court to allow the brief additional testimony, I do not believe it was crucial. The main reason to doubt Rhodes's credibility in this case was that he was about to marry appellant. The State's prior reliance on him in cases against strangers hardly suggests he is just as reliable in a case against his fiancée. The details excluded by the trial court do little to dispel the notion that he would prefer not to postpone his wedding while she serves time in jail.

This case turns solely on whether a crack pipe fell out of appellant's purse. Only three people were present. Officer King testified the pipe did. Marling claimed a Fifth Amendment privilege. Appellant did not testify. In these circumstances, I do not see how appellant's case is strengthened by further details about her boyfriend's role as an informant in drug cases. Thus, I would affirm the trial court's judgment.

TIM TAFT, Justice, dissenting from denial of en banc review.

The panel majority opinion holds that the trial court erred by striking the entirety of the testimony of a defense witness, even though she had claimed her Fifth Amendment privilege not to incriminate herself, because (1) the witness had waived

---

**3.** If the majority is correct that the waiver a witness makes by beginning to testify on a matter ends our inquiry, the *Rogers* Court and numerous others have erred by proceeding to analyze whether the privilege was properly invoked. Moreover, there would never be an occasion to strike all of a witness's testimony, as the privilege in all cases would be "waived." *But see Keller,* 662 S.W.2d at 365 (striking all of witness's testimony when witness invoked privilege as to certain details).

**4.** In a footnote, the majority distinguishes *Keller* because it concerned a privilege claimed during cross-examination by the State rather than direct examination by the defense. If that makes a difference, then defense counsel can easily avoid *Keller* by asking an incriminating question during direct rather than waiting for the prosecution to do so. *Keller* strikes a balance between fairness and the Fifth Amendment that should not depend on who asks the questions.

her privilege and (2) the trial court should have compelled the witness to testify. Because the majority panel opinion departs from well-established case law, including a case from this Court, I requested en banc review.[1] To the denial of en banc review by a majority of this Court, I respectfully dissent for the following reasons: (1) the majority panel opinion seizes upon what it considers a concession by the State that the witness had waived her Fifth Amendment privilege, as important to the panel majority opinion's analysis; (2) the panel majority opinion claims the witness did not have a Fifth Amendment privilege regarding her ownership of the crack pipe; and (3) the majority panel opinion overlooks that appellant changed her position, on appeal, from that she took at trial.

### Factual Context

As the panel opinions point out, two devices were recovered. One was the crack pipe, containing residue for which appellant was being prosecuted; the other was a push rod. After the State rested its case, appellant's counsel made an opening statement that he would show the jury (1) that the driver of the vehicle pled guilty to possession of cocaine "on this device here," and (2) that the driver possessed the property. The defense then called the driver, Shari Marling. When defense counsel asked whether it was "these two devices here" for which Marling and appellant were arrested, Marling identified one device as the one she saw, but claimed never to have seen the other device. Defense counsel then proved Marling had pled guilty to possession of cocaine, based on that arrest, and introduced the judgment. Defense counsel asked whether Marling had received 120 days in jail for possession of cocaine on "this device," and Marling agreed she had.[2]

After additional questions about what happened on the night in question, defense counsel asked Marling about "the other device there" and whether she pled guilty to possession of cocaine on "this device." Marling agreed she had. When defense counsel then asked if "this device" was hers, Marling did not want to testify and invoked her Fifth amendment privilege.[3]

The State objected immediately to Marling's invoking the Fifth Amendment, and proceedings continued outside the pres-

1. That I requested en banc review concerning only the issue of striking the witness's testimony should not be taken as an indication that I agree with the remainder of the panel majority opinion, which went on to find additional reversible error in not allowing redirect examination of a defense witness to show the State's reliance on him as a paid informant, thereby boosting his credibility. It appears a trial court could not have abused its discretion in excluding evidence that would have violated the prohibition of rule 608(b) of the Texas Rules of Evidence, which precludes impeachment or rehabilitation with specific instances of conduct.

2. From this record, it appears that defense counsel was referring to the devices in such a way that the jury was able to understand which was which. It is clear, however, that Marling had pled guilty to possession of cocaine on only one device. It is a fair inference, based on Marling's claim to have seen only one device, that the device she claimed to have seen was the device upon which the cocaine was found concerning which Marling pled guilty.

3. The panel dissenting panel opinion accurately points out that the trial court resolved any confusion as to which device Marling was invoking her Fifth Amendment privilege for, when, to ensure there was no misunderstanding, the trial court asked, "Defense counsel had asked you to look at State's Exhibit No. 2, which is a pipe, and asked if that belonged to you and you took the Fifth about that; is that correct?" Marling agreed that was correct. Thus, there is absolutely no doubt from this record that Marling invoked her Fifth Amendment privilege in regard to the crack pipe.

ence of the jury. The State initially moved for a mistrial, but, after a five-minute recess, apparently changed its motion to a request to strike all of Marling's testimony. The trial court took the position that all of Marling's testimony should be stricken, on the grounds that a witness cannot invoke the Fifth Amendment on part of her testimony. Defense counsel took the position that only the portion in which Marling invoked the privilege should be stricken, on the grounds that a witness cannot invoke the privilege regarding non-incriminating matters.[4] After ascertaining that Marling would continue to invoke the Fifth if asked about the pipe again, the trial court granted the State's motion to strike Marling's entire testimony and instructed the jury not to consider it for any purpose.

### State's Concession

The panel majority opinion relies extensively on its perception that the State conceded Marling had waived her Fifth Amendment privilege by testifying. What the State actually argued was that, having waived her Fifth Amendment privilege by beginning to testify, Marling could not assert the Fifth Amendment privilege to prevent the disclosure of additional, relevant facts. This is a clear statement of the current law in this area. *See Keller v. State,* 662 S.W.2d 362, 364–65 (Tex.Crim. App.1984) (involving a defense witness); *Draper v. State,* 596 S.W.2d 855, 857 (Tex. Crim.App.1980) (involving a State's witness).

The majority panel opinion appears to try to distinguish this case from cases stating the current law on the basis that a witness usually invokes the Fifth Amendment privilege on cross-examination by op-posing counsel rather than, as here, on direct examination by counsel who called the witness. In footnote five, the panel majority opinion characterizes this case as centering on the defendant's right to present evidence and not the State's right to cross-examine witnesses. As this Court pointed out in *Keller v. State,* however, the opposing interests at stake are not dependent on whether the witness in question is a State's witness or a defense witness, or on whether the witness invokes the Fifth Amendment privilege on direct, cross, re-direct, or recross. 646 S.W.2d 506, 508 (Tex.App.—Houston [1st Dist.] 1982), *rev'd on other grounds* 662 S.W.2d 362 (Tex. Crim.App.1984). The competing principles are the right of the accused to present testimony and the right of a witness to avoid self-incrimination. *Id.*

### Fifth Amendment Privilege Regarding the Pipe

The panel majority opinion finds the record too uncertain to conclude that Marling's conviction concerned cocaine on the push rod. Thus, the possibility that Marling had already pled guilty to cocaine on the pipe is raised as a reason she would not have a Fifth Amendment privilege not to testify about the pipe. Appellant appears to raise the same possibility in her brief. Appellant did not, however, take this position before the trial court, which was in a position to see which device defense counsel referred to when speaking about Marling's guilty plea. We should defer to the trial court's having been in a much better position to know to which devices defense counsel referred, and having ruled on that more certain knowledge.

---

4. Noticeably, defense counsel did not argue to the trial court that Marling had waived any right to invoke the Fifth by testifying and should have been compelled to testify. That argument is raised for the first time on appeal.

**Change of Defense Position on Appeal**

At trial, the issue was not whether Marling had a valid Fifth Amendment privilege to assert. The sole issue was whether the trial court should strike Marling's entire testimony or only the testimony in which she invoked the Fifth Amendment privilege. Contrary to the opinion of the panel majority, there was no request below that the trial court compel Marling to testify about the pipe. Because appellant raised that issue for the first time in her brief on appeal, she did not properly preserve the issue for our review. Nevertheless, no purpose would be served in compelling testimony when a witness has invoked her Fifth Amendment privilege. Here, Marling had already invoked her Fifth Amendment privilege regarding the pipe and was prepared to do so again if the trial court had allowed further questioning by defense counsel.

**Conclusion**

The approach taken by the panel majority opinion is extraordinary in its departure from the usual manner in which the issue of invocation of the Fifth Amendment privilege after partial testimony has been treated, including the usual manner in which this Court has treated this issue. The approach of the panel majority opinion is all the more extraordinary in overlooking that appellant's arguments on appeal do not comport with her arguments at trial. To the denial of en banc review by this Court under these circumstances, I respectfully, but strenuously, dissent.