**Opinion filed April 28, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00320-CR
_____

## RODERICK LAMON SNEED, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11482-D**

### M E M O R A N D U M   O P I N I O N

The grand jury alleged in its indictment that Roderick Lamon Sneed committed the offense of aggravated assault with a deadly weapon, a second-degree felony, by intentionally, knowingly, and recklessly causing bodily injury to Ricardo Daniel Bordayo by shooting him in the torso.[1]  The grand jury also alleged that

---

[1]The original indictment alleged shot in the "chest," but the State amended it to read "torso."  The trial court approved that amendment.

Appellant exhibited or used a deadly weapon, a handgun, during the offense. Appellant pleaded not guilty, but the jury found him guilty of the charged offense. The jury assessed punishment at confinement for thirteen years. The trial court sentenced Appellant accordingly.

After the trial court denied Appellant's motion for new trial, Appellant brought this appeal. On appeal, Appellant first claims that the trial court should have compelled Isaac Olvera to testify about the conspiracy between Bordayo and Isaac's mother, Cindy Olvera, to rob Appellant. In his second issue, Appellant asserts that the trial court erred when it did not provide the jury with a necessity instruction and that the error harmed him. We affirm.

## I. *Evidence at Trial*

Because Appellant does not assert a sufficiency challenge on appeal, we outline only those facts pertinent to his issues on appeal. At trial, Bordayo testified that Appellant ran toward him and that, as Bordayo ran away, Appellant shot him. Bordayo testified that, earlier in the day, he had sold "fake dope" to his ex-girlfriend, Jessica Olvera, for $120 and that, when she found out, she came looking for him with her mother, Cindy Olvera. Bordayo explained that he went to get a gun at his friend Jackie's house. As Bordayo stood outside Jackie's house, Jessica and Cindy arrived and demanded Jessica's money back from him because of the "fake drugs." At that time, Appellant, who had arrived with Jessica and Cindy, appeared and ran toward Bordayo. Appellant had a pistol in his hand as he approached Bordayo. Bordayo began to run away, but Appellant caught Bordayo and shot him in the torso.

While incarcerated before trial, Appellant wrote a letter to the court and apologized to the victim. At trial, Appellant testified in his own defense and thought that Bordayo was with Cindy and Jessica when Bordayo robbed Appellant. Appellant claimed that Cindy called him to make a drug buy, so they arranged a meeting. Once they met, Bordayo approached Appellant, brandished a gun at him,

2

took his money, and then "trotted off." He testified that he fired four warning shots to stop Bordayo and then chased Bordayo and that, when Bordayo pointed a gun at him, Appellant shot Bordayo in self-defense.

As part of his defense, Appellant called Isaac Olvera to the stand as a witness. Isaac answered a couple of questions and denied that he had seen Jessica and Bordayo at the Howard Johnson. Isaac then invoked his Fifth Amendment right not to incriminate himself. Defense counsel objected and claimed that Isaac knew about Cindy's and Bordayo's plans to rob Appellant; Appellant wanted to compel Isaac to testify about that knowledge. The trial court wanted Isaac's lawyer to come to the courtroom and advise Isaac. The trial court had Isaac, with his lawyer present, take the stand again; Isaac again invoked his Fifth Amendment right against self-incrimination. Over Appellant's similar objections as before, the trial court did not compel Isaac to testify.

## II. *Standards of Review*

We review complaints of improper limitations on the right to compulsory process under an abuse-of-discretion standard. *Lawal v. State*, 368 S.W.3d 876, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987); *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd)). The Sixth Amendment does not guarantee the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998). With respect to Appellant's first issue, he must have made a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Id.* at 528; *see United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982) (explaining that a defendant seeking to establish a violation of his

3

constitutional right to compulsory process must at least make "some plausible showing" of how the evidence sought would be both material and favorable to his defense).

We review a trial court's decision to exclude a requested instruction on a defensive issue for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000); *Reynolds v. State*, 371 S.W.3d 511, 521 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). As to Appellant's second issue of alleged jury charge error, we use a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Id.* We review the evidence in a light most favorable to the Appellant. *See Guilbeau v. State*, 193 S.W.3d 156, 159 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984)).

### III. *Analysis*

We will address Appellant's first issue on his Sixth Amendment right to compulsory process. We will then address his second issue regarding a necessity instruction.

> A. <u>Issue One</u>: *The trial court correctly determined that Isaac invoked, and did not waive, his Fifth Amendment right against self-incrimination.*

Appellant asserts that once Isaac testified about his knowledge of Appellant, his conversations with Bordayo, and his conversations with Appellant's counsel, he waived his Fifth Amendment privilege. Isaac pleaded his Fifth Amendment right against self-incrimination when asked questions about what he knew about the planned robbery of Appellant. The court ruled that it was an appropriate use of the privilege. Appellant disagreed, objected, and argued that he should have been

allowed to question Isaac on these matters. The State asserts that Isaac properly invoked his Fifth Amendment right against self-incrimination. The State argues that a general discussion about his acquaintance and knowledge of Bordayo does not require him to recount specific conversations at the hotel or recount what he knew about Bordayo's plans to rob Appellant when, in fact, Isaac denied that any such meetings or conversations occurred. As we explain below, we agree with the State.

A "defendant has no right to have a witness assert or invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury." *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986) (citing *Ellis v. State*, 683 S.W.2d 379, 382 (Tex. Crim. App. 1984); *Mendoza v. State*, 552 S.W.2d 444 (Tex. Crim. App. 1977); *Victoria v. State*, 522 S.W.2d 919, 922 (Tex. Crim. App. 1975); *Rodriguez v. State*, 513 S.W.2d 594, 596 (Tex. Crim. App. 1974)). An individual's right to invoke his privilege against self-incrimination overrides the defendant's right to compel witnesses to appear and testify. *Id.* "[O]ne's privilege against self-incrimination trumps an accused's rights under the Sixth Amendment." *Huddleston v. State*, No. 11-05-00198-CR, 2007 WL 1644062, at *2 (Tex. App.— Eastland June 7, 2007, pet. ref'd) (not designated for publication). However, if a witness "voluntarily states a part of the testimony, he waives his right, and cannot afterwards stand on his [Fifth Amendment] privilege." *Stephens v. State*, 59 S.W.3d 377, 380 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (alteration in original) (quoting *Draper v. State*, 596 S.W.2d 855, 857 (Tex. Crim. App. 1980)).

On the other hand, testimony given as to one transaction does not waive the Fifth Amendment right as to all subjects or transactions. *Id.* In this case, Isaac denied that a meeting and conversation took place between Bordayo and him, and when questioned further by defense counsel, he invoked his Fifth Amendment right against self-incrimination. Isaac did not waive this privilege when he denied that he had a meeting and conversation with Bordayo a few days before the aggravated

5

assault on Bordayo. Isaac's Fifth Amendment right trumped Appellant's right to compel process for Isaac to testify. *Bridge*, 726 S.W.2d at 567; *Huddleston*, 2007 WL 1644062, at *2. Because Isaac invoked his privilege and did not waive it, we hold that the trial court did not abuse its discretion when it refused to compel Isaac to testify after he had invoked his Fifth Amendment right against self-incrimination. We overrule Appellant's first issue.

    B. *Issue Two: Appellant was not entitled to a necessity instruction.*

    Appellant asserts that, after he was robbed at gunpoint by Bordayo, he fired warning shots with his own gun, pursued Bordayo, and then shot Bordayo when Bordayo pointed a gun at Appellant. Appellant claimed that this evidence mandated the inclusion of a necessity instruction under Section 9.22 of the Penal Code. TEX. PENAL CODE ANN. § 9.22 (West 2011). The State asserts that Appellant may not raise a necessity defense because he presented evidence on the use of deadly force in self-defense and the court gave a self-defense instruction in the jury charge. We agree with the State.

    When deadly force in self-defense is the conduct that is allegedly "immediately necessary" under the first element of the necessity defense found in Section 9.22(1), the defense of necessity does not apply. *Kelley v. State*, No. 05-15-00545-CR, 2016 WL 1446147, at *7 (Tex. App.—Dallas Apr. 12, 2016, pet. ref'd) (mem. op., not designated for publication); *Wilson v. State*, No. 06-14-00021-CR, 2014 WL 8332264, at *4–5 (Tex. App.—Texarkana Nov. 7, 2014, pet. ref'd) (mem. op., not designated for publication). The self-defense statute, Section 9.32 of the Penal Code, contains a plain legislative purpose precluding a necessity instruction when self-defense is implicated. *Kelley*, 2016 WL 1446147, at *7; *Wilson*, 2014 WL 8332264, at *4–5. In this case, Appellant adduced evidence of his theory of self-defense, and the trial court included a self-defense instruction in the jury charge. Having done that, the trial court did not err when it refused to include a necessity

instruction because an instruction on necessity under the circumstances in this case—where the trial court properly instructed the jury on self-defense—would have undermined the legislative purpose of only allowing deadly force to be used to prevent the immediate threat to one's life or to prevent the commission of specific violent crimes. *See Kelley*, 2016 WL 1446147, at \*7. Because Appellant received a self-defense instruction in the jury charge, the trial court did not err when it refused to include a necessity instruction. Having found that the trial court did not err in refusing to give the requested jury instruction, we need not address harm. We overrule Appellant's second issue.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

April 28, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7