In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00034-CR**
_____

**BRIAN KEITH MELONSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 16-25127**

**MEMORANDUM OPINION**

Brian Keith Melonson[1] appeals the Judgment Adjudicating Guilt following

his deferred adjudication for unlawful possession of a firearm by a felon. *See* Tex.

Penal Code Ann. § 46.04(a)(1). In two issues on appeal, Melonson argues that the

trial court violated his Sixth Amendment right under the Confrontation Clause by

allowing the complainant to invoke his Fifth Amendment right against self-

_____

[1] Appellant is also known as Adrian Duane Brown and Brian Melonson.

1

incrimination during cross examination. *See generally* U.S. Const. amends. V, VI. We affirm.

## Background

On June 1, 2016, a Jefferson County grand jury indicted Melonson for unlawful possession of a firearm by a felon. On May 17, 2017, Melonson pled guilty to the offense and was placed on deferred adjudication for eight years. On July 5, 2018, the State filed its First Amended Motion to Revoke Unadjudicated Probation.

A bench trial was held on February 7, 2019, and Melonson pled true to allegations 1, 2, 3, 6, and 7 in the State's First Amended Motion to Revoke Adjudicated Probation. Melonson pled not true to counts 8 and 9. Thereafter, the State presented evidence on counts 8 and 9 of its motion alleging that on March 29, 2018, Melonson "intentionally and knowingly and recklessly cause[d] bodily injury to [J.K.] . . . by the use of a deadly weapon, namely a firearm, by shooting [J.K.] with said firearm."[2]

Although several witnesses testified at trial, we only address the testimony relevant to the issues raised by Melonson on appeal. J.K. testified that on March 29, 2018, he received a phone call that Melonson was mad at him over some text

---

[2] We refer to the victim and his family members by their initials to conceal their identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

messages J.K. had sent to J.K.'s "ex-girlfriend's child[,]" who was a minor. At this point, the trial court stopped the examination and appointed J.K. an attorney to advise him of his Fifth Amendment right against self-incrimination.

After being appointed an attorney, J.K. stated he was at the apartment of his girlfriend and decided to walk his dog. As he walked his dog around the apartment complex, he noticed a black car pull into the rear of the complex and stop. He immediately grabbed his dog and turned to walk back to his girlfriend's apartment. As he ran towards the apartment, he and his dog were shot. J.K. identified Melonson as the assailant.

At the conclusion of its direct examination, the State offered into evidence a police report filed by Melonson's ex-girlfriend, B.V., against J.K., which the trial court admitted.[3] The report detailed allegations that J.K. sent sexually explicit text messages to B.V.'s and Melonson's 11-year-old daughter.

During cross examination of J.K., the defense attempted to elicit testimony regarding allegations that he sent the sexually explicit text messages to Melonson's daughter. J.K.'s appointed counsel objected stating that J.K. was not going to answer any questions that could be in "violation of [J.K.'s] right not to incriminate himself." The trial court instructed J.K. that he did not have to answer the question. Defense

---

[3] B.V. had previously dated J.K. but she was not in a relationship with him at the time she filed the police report or at the time of trial.

counsel objected to this instruction stating, "it violates Mr. Melonson's right to confront and cross-examine witnesses." The trial court overruled Melonson's objection. Melonson's defense counsel continued questioning J.K. regarding the allegations, and J.K. continued to "plead the fifth." Defense counsel again objected that J.K.'s refusal to answer violated his client's right to confront and cross examine witnesses, which the trial court overruled. J.K. did testify that he believed Melonson's anger towards him was not because of the allegations regarding the text messages, but he believed Melonson was angry because J.K. had dated B.V., Melonson's ex-girlfriend.[4]

At the conclusion of the bench trial, the trial court found Counts 1, 2, 3, 6, and 7 true based on Melonson's pleas of true, found Counts 8 and 9 true based on a preponderance of the evidence presented, and found sufficient evidence to find Melonson guilty. Based on these findings, the trial court sentenced Melonson to six years confinement in the Texas Department of Correction. The trial court certified Melonson's right to appeal, and Melonson timely filed this appeal.

### Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App.

---

[4] We note that although Melonson's trial counsel asked the trial court for a "bill of the questions[,]" our review of the record shows that trial counsel did not make a bill of review regarding testimony by J.K.

2004). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

**Analysis**

The United States Constitution provides that an accused will have the right to confront witnesses against him. *See generally* U.S. Const. amend. VI. "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citation omitted).

> The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citations omitted). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Whether rooted in the Due Process Clause of the Fourteenth Amendment or the Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Indeed, the constitutional right to present a defense includes the right to compulsory process and the rights to confront and cross-examine witnesses. *See Pointer v. Texas*, 380 U.S. 400, 405 (1965). The

5

constitutionally improper denial of a defendant's opportunity to impeach a witness is subject to a harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

A defendant does not have an unqualified right to cross-examination, however. *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). A defendant "is not entitled to cross-examination that is effective in whatever way, and to whatever extent he might wish." *Id*. at 909–10 (internal quotations and citations omitted). Trial judges have wide latitude to limit the scope of cross-examination by imposing restrictions on cross-examination. *Id*. at 910. As long as the "limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an opportunity for effective cross-examination,'" a trial judge may limit the scope. *Id*. at 909 (quoting *Thaxton D. Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014)). We uphold a trial judge's decision to admit or exclude evidence as long as the result is not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391–92.

Notably, the defendant's right under the Confrontation Clause does not trump a witness' right to invoke the Fifth Amendment right against self-incrimination. *See United States v. Ramos*, 537 F.3d 439, 448 (5th Cir. 2008) (quoting *United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir. 1980)) ("When these two constitutional rights intersect, '[a] valid assertion of the witness' Fifth Amendment rights justifies a

6

refusal to testify despite the defendant's Sixth Amendment rights.'"); *see also Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986). The trial court has a duty to protect a witness's Fifth Amendment right and has broad discretion in determining the validity of the claim and subsequent measures used to protect the claim. *United States v. Lyons*, 703 F.2d 815, 818 (5th Cir. 1983) (citations omitted). The United States Supreme Court explained in *Van Arsdall* that several factors go into reviewing the court's analysis in determining if the error was harmless beyond a reasonable doubt including, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684 (citations omitted).

As noted by the Fifth Circuit, the trial court has a "duty" to protect a witness's Fifth Amendment right against self-incrimination, and "broad discretion" in determining privilege and measures regarding Fifth Amendment claims. *Lyons*, 703 F.2d at 818. This requires that the trial court "make an inquiry into the reasonableness of a witness's assertion of the Fifth Amendment privilege against self-incrimination." *Walters v. State*, 359 S.W.3d 212, 216 (Tex. Crim. App. 2011). A witness cannot make a blanket assertion of his Fifth Amendment right. *In re Verbois*, 10 S.W.3d 825, 828 (Tex. App.—Waco 2000, orig. proceeding).

Melonson has failed to demonstrate that the trial court abused its discretion when it limited his cross examination of J.K. Although the trial court allowed J.K. to invoke his Fifth Amendment right against self-incrimination, the information that appellant's trial counsel sought to elicit ultimately came in through other means, i.e. the police report regarding the alleged explicit text messages. Any questions about J.K's assumed bias or motive were provided in detail by the police report. *See Sotelo v. State*, No. 11-17-00118-CR, 2019 WL 2220572, at *5 (Tex. App.—Eastland May 23, 2019, pet. ref'd) (mem. op., not designated for publication) (noting that a trial court did not abuse its discretion by allowing a witness to invoke his Fifth Amendment right as additional cross examination was "not necessary to further expound upon his potential bias as a witness for the State because there were already ample details before the trial court about the pending charges in Comanche County"). Additionally, although it limited his cross examination, the trial court allowed Melonson to ask J.K. why he believed Melonson was mad at him.

> [Defense Counsel]: So, your understanding of Mr. Melonson being mad at you is what? Why is he mad at you? What's your opinion?
>
> [J.K.]: Dating his baby momma, I guess.
>
> [Defense Counsel]: So, it has nothing to do with an allegation that you inappropriately sexually texted a minor child, has nothing - - that's your testimony, him being mad at you in your opinion has nothing to do with that; is that right?
>
> [J.K.]: Correct.

8

[Defense Counsel]: You think he's just mad at you because you dated his baby's momma?

[J.K.] Yes.

The trial court also permitted Melonson to question J.K. about other allegations and other possible suspects.

[Defense Counsel]: So, you've been accused of letting a minor touch your penis, though; right?

[J.K.]: Plea[d] the Fifth.

[Defense Counsel]: May I approach, Your Honor?

The Court: You may.

[Defense Counsel]: That's in your statement; right? Doesn't it say in your statement (Reading): I was accused of letting a minor touch my penis? Is that in your statement? Is that true or false that it's in your statement?

The Court: You can answer the question if it's in the statement, not whether or not the allegation itself is true. Is it in the statement? And, [J.K.'s appointed attorney], if you want to come sit closer to your client, you're welcome to come sit in the jury box so you can . . .

(ATTORNEY/CLIENT DISCUSSION OFF THE RECORD)

[J.K.]. Yes, it's in my statement.

[ . . . ]

[Defense Counsel]: Well, is there anybody else that you may be aware of that may be mad at you because of these allegations against you? Are there other people out there in Port Arthur that may be mad at your inappropriately texting minors or molesting kids?

[J.K.]: I really don't know.

9

[Defense Counsel]: But could there be other people that are mad about that with you besides Mr. Melonson, if he is mad at you? Could there be other people?

[J.K.]: Don't know.

[Defense Counsel]: Well, or any other people have a motive to be creeping up on you or maybe shooting you besides Mr. Melonson? Could be a lot of people, right, in Port Arthur; right?

[J.K.]: I don't know.

Therefore, the trial court protected the fundamental right of the witness against self-incrimination by allowing J.K. to invoke his Fifth Amendment right, while exercising its broad discretion in admitting the police report and allowing limited testimony about other allegations and other possible suspects. As such, we hold that the trial court did not abuse its discretion by limiting Melonson's cross examination of J.K. by permitting J.K. to invoke his Fifth Amendment right against self-incrimination.[5] We overrule this issue. Because we find the trial court did not err, we need not perform a harm analysis.

---

[5] In his brief, Melonson argues that either J.K. or the State waived J.K.'s Fifth Amendment right against self-incrimination. Melonson contends that by admitting the police report with the allegations, the State "opened the door to the evidence concerning the alleged motive of [Melonson][.]" Additionally, he argues that J.K. waived his privilege by testifying to his version of the events and his belief of Melonson's motive, and "[o]nce he testified about the subject, he should have been precluded from asserting a privilege to avoid cross-examination on the same matters." We disagree. Waiver of a witness' Fifth Amendment right is based on the witness' voluntary waiver of his right. *See Draper v. State*, 596 S.W.2d 855, 857 (Tex. Crim. App. 1980). J.K. did not testify as to the pending charges against him.

## Conclusion

Having overruled Melonson's two issues on appeal, we affirm the judgment

of the trial court.

---

He testified that he believed Melonson shot him because of a prior fight between them caused by J.K. dating Melonson's ex-girlfriend. Any prior testimony regarding the pending charges against J.K. came in during a discussion regarding a phone call J.K. had with his girlfriend about Melonson being mad because J.K. was "texting a young lady" or his ex-girlfriend's daughter. The trial court immediately interrupted the testimony and appointed J.K. counsel. Thereafter, J.K. invoked his Fifth Amendment right each time he was asked about the allegations of inappropriate text messages to a minor. Waiver only applies if the witness voluntarily gives the testimony. *Id.* ("Once having related part of the facts of the transaction, a witness should not be permitted to assert a Fifth Amendment privilege to prevent disclosure of additional relevant facts."). We note that although Melonson relies on *Stephens v. State*, a published case from our sister court, to demonstrate his argument that J.K. waived his Fifth Amendment privilege, we do not agree that it is analogous. 59 S.W.3d 377 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In *Stephens*, the appellate court held that that the witness waived her privilege by testifying about the drug transaction. *See id.* at 379–80. But the court explained that although she waived her privilege in this instance, the court was not holding that because a witness "testif[ies] on one subject, a witness waives her privilege on all subjects." *Id.* J.K.'s general testimony that he spoke to his girlfriend about texting a young lady or his ex-girlfriend's daughter, is "vastly different" than testimony regarding sexually explicit text messages sent to a minor and a possible sexual assault that may subject him to criminal prosecution. *See Ortega v. State*, No. 04-03-00937-CR, 2005 WL 596874, at *8 (Tex. App.—San Antonio Mar. 16, 2005, pet. ref'd) (mem. op., not designated for publication) (quoting *Rogers v. United States,* 340 U.S. 367, 374 (1951)) (explaining that general testimony about the witness's employment is "vastly different" than testimony regarding arson and his history of arson, "the latter testimony would subject [the witness] to 'a "real danger" of further incrimination'"). As such, his testimony regarding the reason for Melonson's anger did not waive his Fifth Amendment privilege to refuse to answer subsequent questions about an alleged sexual assault.

11

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 18, 2020
Opinion Delivered September 30, 2020
Do Not Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.